*Toledo (City) v. Celestia Center.

1. PLAINTIFF'S FAILURE TO FILE A REPLY DENYING DEFENDANT'S ALLEGATIONS OF CONTRIBUTORY NEGLIGENCE.

Where plaintiff recovered a judgment in an action for personal injuries alleged to have been caused by the negligence of defendant and through no fault of plaintiff's, to which defendant answered, averring that plaintiff was guilty of contributory negligence: *Held*, that the defendant, after having elected to go to trial without any objection, could not afterwards have such judgment set aside on the ground that plaintiff failed to file a reply denying the allegations of contributory negligence in defendant's answer.

---

*The judgment in this case was affirmed by the Supreme Court, without report, 53 O. S., 659. Minshall, C. J., and Shauck, J., dissent.

**2. THE MERE FACT THAT PLAINTIFF SAW THE DEFECT IN THE WALK WOULD NOT PREVENT HER FROM RECOVERING.**

In an action for injuries caused by a defect in the sidewalk, the mere fact that plaintiff saw the hole or depression in the walk, would not of itself be sufficient to prevent her from recovering, unless she knew, or, by the exercise of reasonable care, might have known that it was dangerous to pass over such walk.

**3. EVIDENCE SHOWING THAT THE CITY HAD NOTICE OF DEFECTS IN ITS SIDE-WALKS.**

Evidence that the street commissioner of a city has been notified of defects existing in a certain sidewalk and which he afterwards corrected, but allowed the cause of such defect to remain, which cause was open and obvious to such commissioner as well as to others, and which subsequently caused the same detect to reappear: *Held*, that such evidence was sufficient to warrant the jury in finding that the city had knowledge of the defective condition of this sidewalk, and therefore that the city was negligent in maintaining that, and is liable in damages for an injury resulting therefrom.

SCRIBNER, J.

In the case of the city of Toledo against Celestia Center, proceedings are had to reverse the judgment of the court of common pleas.

It appears by the record in the case which contains a bill of exceptions embodying all the testimony and proceedings had before the court in the trial of the case. On the trial of the case below, the defendant in error here recovered a judgment against the city of Toledo for certain injuries sustained by falling upon the streets of the city. It appears by the record that on January 30, 1892, the defendant in error while walking along the sidewalk on Monroe street, between Tenth and Eleventh streets, met with a depression or sort of gutter, as is described by some of the witnesses, in the sidewalk which she undertook to step across, but failing to get clear across, slipped and fell and broke her thigh bone. She was taken home in a hack, being unable to walk, and according to the testimony, was unable to sleep in a bed for some seven weeks thereafter, and she suffered a great deal of pain and incurred a good deal of expense in the way of medical attendance and nursing, and she insisted that the city was in default in permitting the depression or gutter which was the cause of the injury to remain in the condition which it was in for quite a long period of time, she being ignorant of it.

At the conclusion of the testimony on the part of the plaintiff, the defendant submitted a motion to take the case from the jury, alleging as grounds in that motion that the plaintiff had filed a petition in which she alleged that the injury occurred through no fault of hers to which defendant had answered averring that the plaintiff was guilty of contributory negligence and no reply had been advanced.

Second. For the reason that the undisputed evidence showed that the defect alleged to have caused the injury, was not occasioned by the negligence of the city, but by water flowing across the sidewalk and property over which the city had no control, and—

Third. Because the proof failed to disclose that the city had either actual or constructive notice of said alleged defect, and—

Fourth. Because the testimony of the plaintiff herself disclosed the fact that she had met with the injury by reason of her own negligence and want of proper care.

This motion was overruled by the court and the defendant below excepted to such ruling. The jury returned a verdict for the plaintiff below assessing her damages at two thousand dollars. The motion for a new trial filed by the city was overruled after which judgment was

rendered upon the verdict. To this action of the court the defendant below, the city of Toledo, excepted, and this petition in error is filed to reverse the judgment so rendered by the court.

There were no exceptions taken to the action of the court during the progress of the trial—none at least, that were regarded of any consequence and no exceptions to the introduction of testimony.

The defendant below excepted to one portion of the charge of the court which I will notice:

"Thereupon the defendant, by its counsel, excepted to that part of the charge of the court wherein the court instructed the jury, 'that the mere fact that the plaintiff saw a hole or depression in the walk would' not of itself be sufficient to prevent her from recovering, unless she knew, or by the exercise of reasonable care, might have known that it was dangerous to pass over it.' "

This paragraph of the court's charge was excepted to by the city; but it appears to us to be entirely in accordance with the rules of law, that is, the mere fact that the plaintiff saw the hole or depression in the walk, would not of itself be sufficient to prevent her from recovering unless she knew, or, by the exercise of reasonable care, might have known that it was dangerous to pass over it.

We think the exception to that instruction of the court is not well taken.

Again, the plaintiff in her petition, alleged that the accident occurred without any fault on her part. The defendant averred that she was guilty of negligence contributing to her injury. This was set forth in the answer and to that allegation of the answer, there was no reply. But here was the averment in the petition that she was not guilty of any fault contributing to her injury and here was an averment in the answer that she was guilty of negligence contributing to her injury, and these respective averments in the respective pleadings were all that was said in the pleadings upon that subject. But the case went on to trial without objection or exception and all the testimony of the plaintiff was submitted showing, as she claimed, that the allegations of her petition were true and that she was entitled to recover against the city, and the plaintiff's proof submitted by her, bore directly upon the averment upon her part, that she was not guilty of negligence in crossing the defective place in the sidewalk. Not only her own personal testimony but that of one of her witnesses at least, bore upon the question as to whether or not she was guilty or whether she was at fault in undertaking to step across the depression which appeared to be the cause of her fall; and one other witness at least, was examined and cross-examined upon that subject and testified in regard to it.

We do not think that it lies in the mouth of the city, after having gone to trial upon the pleadings as made up, and after having permitted the plaintiff to give in her full testimony—her own testimony and that of her witnesses, bearing upon the question of the liability of the city and after having cross-examined her witnesses, then to say that there was nothing to be tried to the jury for the reason as explained—that the averment in the petition that the plaintiff was not guilty of negligence in the matter—was improperly there and should not be deeded or regarded and that the averment in the answer that she was guilty of negligence was not denied by any reply of the plaintiff. Of course, if the proposition of the plaintiff in error here was well taken, there was nothing to try. If the statement in the answer that the plaintiff had been guilty of

negligence contributing to her injury was to be taken as true, there was no issue to go to the jury—none whatever. No matter what might have been the extent of the injury, or no matter how defective the sidewalk might have been with the knowledge of the city—if it were to be taken as true, that negligence on the part of the plaintiff contribute to this injury, she had no right of action upon the issues as they stood, and there was no reason for empaneling a jury, and it was not proper to examine and receive testimony upon matters alleged pro and con by the parties. But the city elected to go to trial; elected to assume that the question of contributory negligence upon the part of the plaintiff was properly put in issue and was one of the issues to be tried to the jury because the witnesses of the plaintiff and the plaintiff herself were cross-examined upon all questions arising in the case.

We are brought then simply to the main proposition submitted as to whether or not the verdict of the jury in behalf of the plaintiff is sustained by sufficient evidence, and it is claimed here that there was not sufficient proof to establish that the city had knowledge of the defect, or that the city was in default in the matter; and that the testimony of the plaintiff herself established the fact that she had been guilty of contributory negligence in meeting with an accident resulting in the injury.

This lady was about sixty-five years old at the time this accident occurred. She says she was going along the sidewalk It was a brick sidewalk, and in response to a question by the court, she says: "I fell; it was on a defective sidewalk; the bricks were thrown up and of course, their being thrown up, caused a place for me to step into."

Further on, she makes this additional statement: Question: "Now, I will ask you to explain more fully to the jury how you came to fall; under what circumstances you came to fall that day or morning, if you recollect?" Answer: "All I recollect is, as I said, the bricks were misplaced." Question: "How did you come to fall?" Answer: "I undertook to step, just as I say—to walk or step across and I stepped on to one of the highest bricks and my foot came back in down below that, and I fell over back. That is as near as I can remember." Question: "Before you attempted to go over that brick walk, did you have any knowledge that there was a hole there?" Answer: "No, sir, I didn't. I wasn't looking for any such place, although years before I had been along there when it was uneven; it used to be quite uneven from that corner out to Ontario street, but I was not looking for anything unusual."

Mr. Burns was called as a witness for the plaintiff. He owned property abutting on Monroe street near the place where this plaintiff fell. He had a carpenter shop near there and in giving a description of it, he says, "I was walking down Monroe street from Eleventh street towards my shop. I was just about Eleventh street and I saw a lady walking ahead of me and I saw her fall. I had my boy in my wagon and I says to him, 'there is a bad fall.' We picked the lady up and carried her to the steps of the shop." Question: "Describe any of the circumstances, if any, how she fell?" Answer: "She was walking along and about ten feet from the line that divided my yard and a vacant lot there, the water had run across the sidewalk and had washed the sand out and formed a gutter sloping into the sidewalk and when she stepped on to that, it being slippery, her two feet seemed to go from under her and she fell upon her hip; that is about the situation of the fall. The lady could not speak when we picked her up. We put her upon the steps and I got a hack and sent her home." Question: "This depression in the sidewalk was

Toledo (City) v. Center.

caused by what?" Answer: "It was caused by the ground. On the southeast side of Monroe street the ground is high and Mr. Hoyt had graded away up to the corner and had put in a catch basin at the curbing and had put in sewer connections and the gravel around the catch basin was always escaping into it and when that would fill up, it would overflow across the sidewalk and carry sand out from under the brick." Question: "How did that affect the brick walk?" Answer: "At this place there was a dent in the sidewalk and the bricks had sunk down at this place." Question: "How did that leave the brick as to whether they were loose and whether they would remain in the same position where they were at that time?" Answer: "The bricks, of course, were loose and some of them were out." Question: "What do you say about how far was the lowest part of this depression where she fell below the level of the side-walk?" Answer: "The depression across the sidewalk, I should judge was about four inches, clear across. I didn't measure it, but I know it was quite a depression." Question: "At that particular locality, whereabouts would you say, with reference to the edges of the walk, that is, the part of the walk where she fell—whether it was near the inside or the outside or the middle?" Answer: "It was near the outside. She lay quite close to the curbing when she was picked up." Question: "You may state to the jury how long that particular part of the sidewalk had been in that condition which you have described, before that accident?" Answer: "It was in that candition from the time I had moved there."

What I have read is sufficient to indicate the condition of the side-walk at that place, and the manner in which the accident occurred.

The testimony of these witnesses is not contradicted in any particular by any other testimony introduced. According to the statement of this last witness—he states a little more particularly—that this depression was about two feet across and the depth in the lowest part was about four inches. It was a sort of shelving depression, or of that nature.

There is no dispute but that the accident occurred in the manner stated by the plaintiff herself and by Mr. Burns who saw her fall. There was this depression; some bricks were loose and lying in an uneven con-dition, and the plaintiff, in attempting to step across this distance of two feet over this depression in the sidewalk—in placing her foot down upon the far side, slipped and fell and the injury resulted from that fall.

Now, it appears quite satisfactory from the testimony of the witness Burns as to what was the cause of this depression in the sidewalk. The lot lying next to it was flooded a good portion of the time with water and that water flowed down from the lot across the sidewalk in under the brick and carried away a portion of the sand in which the brick was laid washing the sand out from under the brick thereby allowing the brick to settle down so that this depression came there.

It seems that about the year 1890, that portion of this sidewalk in this vicinity had also been badly cut to pieces by teams being driven with loaded wagons across this pavement. Mr. Burns testified that he called the attention of the street commissioner to these defects in the sidewalk and after such importunity, succeeded in getting them corrected. The places cut by the wheels were repaired and this place caused by the overflow of the water was repaired; but he says, the cause remaining right along, the flow of water continuing—that was matter that was open and obvious to the street commissioner as well as to others, causing the same defect to reappear in the sidewalk; that he had notice of this, but he

was unable to state how long he had actual notice of the second depression, but that it was open and obvious that the water was flowing down under the sidewalk at that point all the time   The testimony in that regard, it seems to us, shows sufficiently to warrant the jury in so finding that the city had knowledge of that defective condition, and we can not say, in the face of the verdict of the jury, that the plaintiff was guilty of negligence in undertaking to step across a depression of that character —of about two feet in width, in the sidewalk, and we see no reason therefore for disturbing the verdict of the jury and the judgment will be affirmed.